UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDINA,<br><br>　　　　　Appellant,<br><br>　　v.<br><br>DEVIN DERHAM-BURK, Chapter 13 Trustee,<br><br>　　　　　Appellee. | Case No. 23-cv-04988-PCP<br><br>**ORDER RE: BANKRUPTCY APPEAL** |

Appellant Jose Medina appeals a decision of the United States Bankruptcy Court for the Northern District of California denying his Motion for Disgorgement of Excess Trustee Fees from Estate Property Sale ("Motion to Disgorge"). The motion arose out of Medina's Chapter 13 bankruptcy case. Medina sought to disgorge fees withheld by Appellee Devin Derham-Burk, the Chapter 13 Trustee ("the Trustee"), following the sale of Medina's residential property. He claims the Trustee breached her fiduciary duty. For the reasons stated herein, the Court finds that the Bankruptcy Court properly denied Medina's Motion to Disgorge and concludes that there is no basis in the record to find that the Trustee breached her fiduciary duty. The ruling of the Bankruptcy Court is therefore AFFIRMED.

**BACKGROUND**

Medina filed for Chapter 13 bankruptcy on December 5, 2023. "Chapter 13 bankruptcies provide debtors receiving a regular income an opportunity to pay off their debts while retaining their property." *In re Evans*, 69 F.4th 1101, 1103 (9th Cir. 2023). The debtor must file a plan with the court detailing how they will use future income to pay of their debts. *Id.* After the debtor files their bankruptcy case, a trustee supervises the case and performs such functions as collecting

payments from the debtor and ensuring timely payment to creditors. *Id.* at 1104. The Trustee also objects to plan confirmation or proof of claims, as necessary. *See id.* In return, the trustee receives a statutorily defined fee, often ten percent, of all property disposed of under the debtor's plan. *Id.*; *see* 28 U.S.C. § 586(e).

As relevant here, Medina's estate included his own residential property. This property served as security for three deeds of trust, including one held by Val-Chris Investments, Inc. ("Val-Chris") on behalf of creditors Daroll and Dalores Frewing and Patrick Harkin ("creditors"). Media filed a motion to sell this property, which the Bankruptcy Court granted on March 16, 2023 on the condition that the sale satisfied the Trustee's escrow demands. The property closed on April 11, 2023, and the Trustee distributed proceeds to the creditors shortly thereafter.

On January 20, 2023, prior to the sale of Medina's property, the creditors filed a secured proof of claim #10-1 ("Claim #10-1") in the amount of $241,437.23. Chris Boulter, the president of Val-Chris and the creditors' authorized agent, signed Claim #10-1 on January 16, 2023 under penalty of perjury. Claim #10-1 included multiple supporting attachments, including the original loan documents, a promissory note endorsement, a recorded deed of trust, and a recorded assignment of deed of trust. The documents showed that a final balloon payment for the secured debt had come due on June 15, 2021. The Trustee reviewed these documents and determined that they were internally consistent and thus provided no basis for an objection.

On April 7, 2023, four days before the close of Medina's property, Medina's counsel (Mr. Gonzalez) and the Trustee spoke to each other via telephone. Mr. Gonzalez told the Trustee that the maturity date of the secured debt owed to the creditors had been extended to June of 2023 and that the amount listed on Claim #10-1 was no longer the correct amount owed to the creditors. Mr. Gonzalez notified the Trustee that the creditors' counsel intended to file an amended proof of claim. When the property sold, the Trustee calculated her statutorily authorized fee of ten percent based on Claim #10-1, a total of $24,143.72. On April 14, 2023, three days after the sale of Medina's residence, the creditors' counsel, Mr. Graff, filed an amended proof of claim #10-2 ("Claim #10-2").  This form listed the amount necessary to cure default as $10,722.21. Except for one a one-page itemized document, Claim #10-2 included no further supporting documents. Mr.

1  Graff, attorney for the creditors, signed the form, not Boulter, the creditors' loan servicer. Had the

2  Trustee calculated her statutorily authorized fee based on the amount listed on Claim #10-2, she

3  would have withheld only $1,072.22.

**PROCEDURAL HISTORY**

On June 22, 2023, the Trustee filed a motion to dismiss Medina's bankruptcy case for lack of prosecution because Medina had not yet filed his Chapter 13 plan. The Bankruptcy Court conditionally granted the order and set a deadline to confirm the Chapter 13 plan of September 14, 2023. The Trustee issued a check to Medina with proceeds from the sale of his residence on July 19, 2023. On August 17, 2023, Medina filed a Motion to Disgorge seeking to recoup the difference in the Trustee's withheld fee based on the differing debt amounts provided on the two proof of claim forms. Specifically, Medina argued that the Trustee had wrongfully retained $23,071.50. The Bankruptcy Court heard argument on the Motion to Disgorge on September 14, 2023 and issued an order denying the Motion to Disgorge later that day. The Court then dismissed the case for lack of prosecution on September 15, 2023.

On appeal, this Court ordered the parties to submit supplemental briefing addressing whether the case was moot under *In re Evans*, which requires the Trustee to return all Chapter 13 fees where a debtor has not confirmed a payment plan prior to a case's dismissal. The Court held a hearing on the appeal on October 31, 2024.

**LEGAL STANDARD**

District Courts have subject matter jurisdiction "to hear appeals from final judgments, orders, and decrees … of bankruptcy judges. 28 U.S.C. § 158 (a)(1). On appeal the Court "review[s] findings of fact for clear error and conclusions of law and of mixed questions of law and fact *de novo*." *In re Icenhower*, 757 F.3d 1044, 1049 (9th Cir. 2014).

**ANALYSIS**

This Court reviews the Bankruptcy Court's findings of fact for clear error. The order denying Medina's Motion to Disgorge was admittedly brief, stating "[f]or the reasons stated more fully on the record [of the hearing on the Motion], the Motion is DENIED." Dkt. No. 131. The hearing referred to in the order was held earlier the same day. In that hearing, Judge Hammond

3

said the following:

> The only proof of claim that was on file when the trustee disbursed funds was the first proof of claim. It was prior to the amendment. There was — I can't remember if it was an email or a fax, but there was a message indicating that there would be an amended claim forthcoming. But there wasn't one filed by the time of disbursement. There's no information before me indicating the trustee took any difference in her timeliness of how she received funds from escrow and disbursed through her fund. So there's no — despite the argument that the trustee rushed to obtain — to obtain a higher fee, there is no evidence to support that there was anything outside the normal course of the trustee's disbursements out of a sale escrow.
>
> So given that, and because that was — to be clear, because there was only one proof of claim on — on the docket — or on the claims register and, second, because there's no indication that the trustee went outside her normal course of disbursements following a sale, I will rule in the trustee's favor.

This holding relied on two findings of fact. First, at the time of the Trustee's disbursement, there was only one proof of claim (#10-1) on file. Second, the Trustee did not undertake any actions outside of her typical course of business in disbursing proceeds to the creditors following the April 11, 2023 sale. In other words, the Trustee did not rush the sale of Medina's property to recoup a higher fee with the knowledge that Medina's attorneys planned to file a new proof of claim form at a later date. Upon a review of the record before the Court, neither of these findings of fact are clearly erroneous.

Medina argues on appeal that the Bankruptcy Court erred in denying his Motion to Disgorge because the Trustee "violated her duty to adhere to the highest standard of professional, moral[,] and ethical conduct in" using Claim #10-1 to calculate her statutorily authorized fee. Dkt. No. 7, at 7. He claims that if the Trustee truly believed that Claim #10-2 was invalid she would have objected to Claim #10-2, and that her failure to do so demonstrates that her actual purpose was to protect the "windfall" payment resulting from her use of Claim #10-1. This was, in Medina's view, a "brazen breach" of her fiduciary duty. *Id.* at 9. The Court reviews this mixed question of law and fact *de novo*.

A Trustee has a duty to "object to the allowance of any claim that is improper[.]" 11

U.S.C. § 704(a)(5); *see id.* at § 1302(b). At close of escrow for Medina's property, the only claim on file was Claim #10-1. Claim #10-2 was filed three days later. The Trustee did not object to either of the two claims, which Medina argues was improper. But this argument is flawed. The Trustee properly investigated Claim #10-1 and found that no objection was necessary. Claim #10-1 included appropriate supporting documentation that demonstrated its veracity. By contrast, Medina attached only a one-page itemized document to Claim #10-2, which the Trustee found was inconsistent with the original supporting loan documents. Claim #10-2 failed to demonstrate to the Trustee that the balloon payment had in fact been extended to a later date. Further, Claim #10-1 was signed by Boulter, the president of Val-Chris, who represented the Frewings as their loan servicer and had intimate familiarity with the details of the loan. Claim #10-2 was signed by the creditors' new attorney and served upon their recently deceased attorney but not Boulter.

The Trustee also concluded that Claim #10-2 was legally invalid because the claim included no written agreement demonstrating that the underlying loan had, in fact, been extended or deferred. Under California Law, which governs the Deed of Trust securing the Frewing claim, the extension of the maturity date of a balloon payment must be executed in writing. *See* Cal. Civ. Code §§ 1624(a), 2922; *Reeder v. Specialized Loan Servicing LLC*, 52 Cal. App. 5th 795, 801–02 (2020). And "when a claim … is based on a writing, a copy of the writing shall be filed with the proof of claim." Fed. R. Bankr. P. 3001(c)(1). In support of his Motion to Disgorge, Medina's counsel argued that Claim #10-2 is based upon a "Maturity Notice" that extended the balloon payment from June 15, 2021 to June 15, 2023. But even to this date, counsel has not provided a copy of this document to the Bankruptcy Court or this Court. Thus, even if the supporting documentation attached to the claim had been consistent with the original loan documents, the failure to include a written agreement demonstrated to the Trustee that any agreement to extend the balloon payment was void under California's statute of frauds. In light of this and the general disparities in supporting documentation discussed above, the Trustee was justified in concluding that Claim #10-1 remained the controlling claim form at all times. And because the two Claim forms addressed the same property, there was no need for her to object to Claim #10-2 while Claim #10-1 remained in effect and the Trustee had already disbursed funds to the Creditors.

5

1   Medina of course could have objected to Claim #10-1, but he did not.

2         In short, while Medina argues that the Trustee failed to investigate Claim #10-2, the record shows that the Trustee did investigate that claim and concluded that it was insufficiently supported and legally deficient. Thus, Claim #10-1 controlled the sale of Medina's property, and given that the disbursement of funds to the creditors occurred before Claim #10-2 was submitted, there was no need to object to that claim.

      Medina next argues that the Trustee's delay in responding to his proof of claim resulted in her receiving a financial "windfall" when deducting her statutory fee. At best, the argument reflects a misunderstanding of the difference between the Trustee's statutory fee and her compensation; at worst, it insinuates that the Trustee is engaged in some form of self-dealing or personal enrichment, an inference that is again belied by the record. The percentage fee retained by a Chapter 13 Trustee is governed by statute. *See* 28 U.S.C. § 586(e). It is determined by the Attorney General of the United States after consultation with the United States Trustee. *Id.* The fee cannot exceed ten percent of the receipt of sale. This fee goes to support the general operating budget of the Trustee's office. The fee is automatically calculated and deposited into the Trustee's operating account; she does not have discretion to adjust the retained fee. This compensation forms one component of the Trustee's annual operating budget. Crucially, the compensation paid to the individual appointed to serve on the Trustee's behalf in any particular Chapter 13 bankruptcy does not rise or fall based on the amount of fees retained from that bankruptcy. The control, scrutiny, and routinization of these processes significantly reduce the risk that an appointed trustee might game a sale to enrich herself.

      Regardless, Medina's argument is contrary to the Bankruptcy Court's factual findings. As noted above, the Bankruptcy Court found that the Trustee did not undertake any actions outside of her typical course of business in disbursing proceeds to the creditors following the April 11, 2023 sale. In other words, she clearly adhered to the processes set out by federal statute in handling the sale of Medina's property. Because those findings are not clearly erroneous, they are binding on appeal and preclude the Court from reversing the decision below based on any purported misconduct in the Trustee's processing of the property sale and its proceeds.

For these reasons, the Bankruptcy Court's decision is affirmed. This, however, does not necessarily mean that the Trustee is entitled to retain the fee that was paid upon sale of Medina's property. In *In re Evans*, the Ninth Circuit held that where, as here, a Chapter 13 plan is never confirmed, the "Trustee must return the fees she collected prior to dismissal." *In re Evans*, 69 F.4th at 1108. Although this holding would appear to apply directly to the facts presented here, that question is not properly before the Court because, when the Bankruptcy Court denied Medina's Motion to Disgorge, his case had not yet been dismissed.[1] Accordingly, even if the Trustee's failure to return all fees to Medina following the dismissal of his case without confirmation contradicts the holding of *In re Evans*, Medina should seek the return of those fees in the Bankruptcy Court in the first instance.

**CONCLUSION**

For the foregoing reasons, the bankruptcy court properly denied Medina's Motion to Disgorge and finds no basis in the record to hold that the Trustee breached her fiduciary duty. The ruling of the Bankruptcy Court is therefore AFFIRMED.

**IT IS SO ORDERED.**

Dated: December 2, 2024

P. Casey Pitts
United States District Judge

---

[1] The Bankruptcy Court declined to rule on the *In re Evans* question on that basis.